<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **ELIZABETH GUZMAN,** | : | |
| Plaintiff, | : | Civil Action No. 13-2518 |
| v. | : | OPINION |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | |
| Defendant. | : | |

**SALAS, DISTRICT JUDGE**

**I.      INTRODUCTION**

Elizabeth Guzman ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying her Social Security Insurance ("SSI") disability benefits under the Social Security Act.  This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g).  This motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part and remanded in part.

**II.     FACTUAL & PROCEDURAL BACKGROUND**

On June 17, 2009, Guzman filed a claim for SSI beginning on June 1, 2009 based on her lower back pain, hypertension, diabetes, depression and anxiety.  (D.E. No. 11, Administrative Record ("Tr.") at 16).  The claim was initially denied on January 15, 2010, and denied again on June 12, 2010 after Guzman requested reconsideration of the initial denial.  (*Id.*).

1

Following the first two denials, Guzman requested a hearing before an ALJ for *de novo* review. (*Id.*). Her case was heard before ALJ Richard West on July 19, 2011. (*Id.*). Based on the hearing and the record before him, ALJ West determined that Plaintiff suffers from numerous health problems, including: diabetes, carpel tunnel syndrome, degenerative disc disease of the cervical spine and lumbar radiculopathy, disc herniation of the L4-5 and C5-6 discs, a disc bulge in the L5-S1 and C6-7 discs, mild spinal stenosis, depression and anxiety disorder, NOS (not otherwise specified), and pain associated with the various ailments. (*Id.* at 24-26).

ALJ West concluded that although Guzman had not been engaged in substantial gainful activity since June 17, 2009 and had severe impairments, Plaintiff's physical and mental disorders did not individually or collectively satisfy the statutory requirements for finding a disability under SSI. (*Id.* at 24). Specifically, ALJ West found that Guzman retained the ability to:

> [L]ift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk up to 2 hours in a 8-hour day; and sit for the remaining hours. The claimant cannot climb ladders, ropes or scaffolds, and can perform all other postural functions occasionally. The claimant can perform frequent handling and fingering. She must avoid concentrated exposure to extreme heat, humidity, and dust, fumes, and similar occupational irritants. The claimant can understand, remember, and carry out simple instructions and can have occasional interaction with the general public.

(*Id.* at 26). Based on this determination and the testimony of a vocational expert, ALJ West found that Plaintiff had a residual functional capacity to work, and that there were a significant number of jobs in the national economy that Guzman could perform. (*Id.* at 29-30). ALJ West therefore concluded that Guzman was "not disabled" under the Social Security Act, and accordingly denied her claim on August 4, 2011. (*Id.* at 30).

Following the negative determination, Plaintiff filed a timely appeal of the decision to the Appeals Council, who denied the request for review on February 21, 2013, finding "no reason under our rules to review the Administrative Law Judge's decision." (*Id.* at 1). Plaintiff made a timely appeal of the Appeals Council's opinion on April 19, 2013, filing her Complaint with this

Court.[1]  (D.E. No. 1).  Defendant filed an answer on August 20, 2014.  (D.E. No. 10).  Plaintiff filed a brief pursuant to L.Civ.R. 9.1(e) on December 9, 2013, arguing that the ALJ improperly gave less weight to the opinions of the treating physician, and that the ALJ failed to conduct a proper combination analysis.  (*See* D.E. No. 14, Brief in Support of Plaintiff Elizabeth Guzman ("Pl. Mov. Br.") at 13, 17).  Defendant filed a brief in opposition on March 4, 2015.  (D.E. No. 18, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")).  The case is now ready for determination.

### III. LEGAL STANDARD

#### A. *Standard for Awarding Benefits*

Pursuant to the SSA, to receive SSI, a plaintiff must show that she is disabled by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Thus, the plaintiff's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).  Impairments that affect a plaintiff's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations.  20 C.F.R. § 404.1569a; *see also Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000).  All other impairments are considered non-exertional.

---

[1] The Court also notes that Plaintiff filed a second claim for SSI on April 17, 2013 based on the same disabilities stated in the first claim for SSI.  (Pl. Mov. Br. at 1-3).  The second claim for benefits was approved on November 10, 2014 by ALJ Donna Krappa.  (D.E. No. 15).  However, since the issue in this case is the first claim for SSI, the Court finds the second claim for SSI irrelevant to this appeal.

*Sykes,* 228 F.3d at 263. Decisions regarding disability are made individually based on evidence produced at a hearing. *Id.* at 262 (citing *Heckler v. Campbell,* 461 U.S. 458, 467 (1983)). Congress has defined a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3).

The SSA proscribes a five-step sequential evaluation to determine whether a plaintiff is disabled. 20 C.F.R. § 416.920. The evaluation will continue through each step unless it can be determined at any point that the plaintiff is, or is not disabled. 20 C .F.R. § 416.920(a)(4). The claimant bears the burden of proof for the first four steps of the analysis. *Poulous v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). The burden shifts to the Commissioner for the fifth step. *Id.* (citing *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000)); *see also Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (noting that "the burden of production shifts to the Commissioner" at the fifth step) (internal quotation marks omitted)).

At step one, the plaintiff's work activity is assessed, and she must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). A plaintiff is engaging in substantial gainful activity if she is doing significant physical or mental activities usually done for pay or profit. *Id.* at § 416.972. If the plaintiff is engaged in substantial gainful activity, she will be found not disabled and the analysis will stop, regardless of the plaintiff's medical condition, age, education, or work experience. *Id.* at § 416.920(b). If the plaintiff is not engaging in substantial gainful activity, the analysis proceeds to the second step. At step two, the plaintiff must show that she has a medically determinable "severe" impairment or a combination of impairments that is "severe." *Id.* at § 416.920(a)(4)(ii). An impairment is severe when it significantly limits a plaintiff's physical or mental ability to perform basic work activities. *Id.* at § 416.920(c). It is not

severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010) (citation omitted). If a plaintiff does not have a medically determinable severe impairment, she is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), (c). If the plaintiff has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the plaintiff's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the impairments are the same or equivalent to those listed, the plaintiff is per se disabled. 20 C.F.R. § 416.920(d); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). At this point, the ALJ must set forth the reasons for his findings. *Burnett,* 220 F.3d at 119. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. *Id.* Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review." *Id.*

When the plaintiff does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether the plaintiff's residual functional capacity ("RFC") enables her to perform her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). This step involves three sub-steps: (1) the ALJ must make specific findings of facts as to the plaintiff's RFC; (2) the ALJ must make findings regarding the physical and mental demands of the plaintiff's past relevant work; and (3) the ALJ must compare the RFC to the past relevant work to determine whether the plaintiff has the capability to perform the past relevant work. *Burnett,* 220 F.3d at 120. The SSA classifies RFC and past work by physical exertion requirements ranging from "sedentary" to "very heavy" work. *See id.*; 20 C.F.R. § 404.1567. If

the plaintiff can perform her past work, the ALJ will find that she is not disabled. 20 C.F.R. § 416.920(f). If the plaintiff lacks the RFC to perform any work she has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Commissioner must show that, based on the plaintiff's RFC and other vocational factors, there is a significant amount of other work in the national economy that the plaintiff can perform. 20 C.F.R. § 416.920(a)(4)(v). During this final step, the burden lies with the government to show that the plaintiff is not disabled by demonstrating that there is other substantial, gainful work that the plaintiff could perform, given her age, education, work experience and RFC. *See Rutherford v. Barnhart,* 399 F.3d 546, 551 (3d Cir. 2005); *Sykes,* 228 F.3d at 263. If the Commissioner cannot show that there are other jobs for the plaintiff in the national economy, then the plaintiff is disabled. 20 C.F.R. § 416.920(g)(1).

*B. Standard of Review*

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g) and 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review in that it cannot "weigh the evidence or

substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted).

**IV.    DISCUSSION**

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because (1) the ALJ failed to give deference to Plaintiff's treating physician, and (2) the ALJ's step three and step four determinations contradict the evidence by his failure to properly analyze Plaintiff's disorders. (Pl. Mov. Br.). For the reasons below, the Court affirms ALJ West's decision with respect to the level of deference given to the treating physician, the analysis of individual impairments under step three, and determination of RFC under step four, but remands for a proper combination analysis under step three.

   A. *The ALJ Properly Gave Less Deference to Plaintiff's Treating Physician*

Plaintiff argues that ALJ West improperly rejected the opinion of Plaintiff's treating physician, Dr. Grelecki, with respect to Plaintiff's psychiatric disorders. (*Id*. at 13-17). For the reasons below, the Court disagrees.

Under Third Circuit precedent, "ALJs may not ignore consistent medical evidence showing disability in favor of their own opinion that there is no disabling impairment." *Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989). However, while treating physicians' opinions are given great weight, an ALJ can disregard certain aspects of those opinions for specific and legitimate reasons including a substantive analysis of the record and contradictions therein. *See Raymer v. Massanari*, 2001 U.S. Dist. LEXIS 19693, *14 (E.D. Pa. 2001) (citing cases).

> Dr. Grelecki
>
> indicated that the claimant would be unable to maintain attention for 2-hour segments, maintain regular attendance and be punctual with customary, usually strict tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruption from psychologically based

7

> symptoms, perform at a consistent pace without unreasonable number and length of rest periods, and deal with normal work stress . . . .

(Tr. at 22). He further "noted that [Plaintiff] had marked difficulties in maintaining social functioning and extreme difficulties in maintaining, concentration, persistence, or pace, which would indicate listing level severity." (*Id.* at 25). ALJ West, however, gave less weight to this opinion, noting in part that

> this report was made after only 2 sessions with [Plaintiff] and is inconsistent with [Plaintiff's] ability to live on her own and take care of her children. In a May 25, 2011 report, Dr. Grelecki stated that the claimant has depressive disorder, NOS, anxiety disorder, NOS, and asthma, but does not state that [Plaintiff] is totally disable. Instead, Dr. Grelecki states that a home air conditioner is medically necessary during the summer months.

(*Id.*). ALJ West ultimately concluded that Plaintiff "has depression and anxiety disorder, NOS, with mild restriction of the activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of deterioration." (*Id.*). Plaintiff essentially argues that ALJ West should have given more deference to Dr. Grelecki's opinion and that ALJ West's conclusion is erroneous as a result. (Pl. Mov. Br. at 13-17).

Plaintiff mischaracterizes ALJ West's decision. ALJ West did not reject Dr. Grelecki's opinion as Plaintiff contends, but simply gave his opinion less weight under 20 CFR 416.927. The Court agrees with ALJ West's determination that Dr. Grelecki's opinion deserved lesser weight for three main reasons.

First, ALJ West noted that Dr. Grelecki had seen Plaintiff only twice. (Tr. at 25). "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 CFR § 416.927(c)(2)(i). "When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more

weight than we would give it if it were from a nontreating source." *Id.* Thus, it was appropriate for ALJ West to take into consideration the fact that Dr. Grelecki had only treated Plaintiff twice.

Second, Dr. Grelecki's opinions were not entirely consistent with the evidence of record. "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 CFR § 416.927(c)(4). For example, ALJ West noted that evidence showing Plaintiff's ability to live independently, do housework, and care for her children was inconsistent with Dr. Grelecki's opinion that Plaintiff has marked difficulties in maintaining social functioning and extreme difficulties in maintaining concentration, persistence, or pace. (*Id.* at 25).

Third, Dr. Grelecki's opinions were not entirely supported by his treating notes. (*Id.* at 28-29). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 CFR § 416.927(c)(3); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (stating that an ALJ may afford a treating source's opinion more or less weight, depending on the extent which the source provides supporting explanations). Here, Dr. Grelecki's functional assessment noted recurrent severe panic attacks, but ALJ West noted that such attacks were not well documented. (Tr. at 28). Additionally, in a May 2011 letter, Dr. Grelecki did not note any limitations except that it was medically necessary for Plaintiff to have air conditioning in her home during the summer months. (*Id.* at 29).

Taken together, it was appropriate for ALJ West to conclude that Dr. Grelecki's opinion deserved lesser weight under 20 CFR § 416.927 and the Court affirms ALJ West's decision in that regard.

B. *The ALJ Did Not Adequately Address Whether the Combination of Plaintiff's Ailments Constituted the Medical Equivalent of One of the Listed Impairments*

Plaintiff argues that because the five distinct impairments identified at step two were not combined at step three for a discussion of medical equivalence, the Court must remand. (Pl. Mov. Br. at 17-23). The Court affirms the ALJ's step three analysis with respect to analysis of individual impairments, but remands for a combination analysis.

1. <u>Individual Analysis</u>

First, the Court notes that ALJ West sufficiently explains why Plaintiff's impairments do not meet the Appendix 1 listings individually. Substantial evidence supports this conclusion, and the Court is therefore required to give the opinion deference. *Hartranft*, 181 F.3d at 360.

In order to conclude that Plaintiff is disabled pursuant to 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.04, ALJ West would have to find that Guzman had an affective disorder "[c]haracterized by a disturbance of mood accompanied by a full or partial manic or depressive syndrome" which colored her "whole psychic life." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04. Further, ALJ West would have to find that there was a "medically documented persistence, either continuous or intermittent" of a significant number of depressive, manic, or bipolar symptoms, and that those symptoms caused at least two marked restrictions and difficulties in Plaintiff's ability to function. *See id.*

The Court's review of ALJ West's determination indicates that he could have reasonably found that Plaintiff failed to pass the Listing 12.04 criteria based on (1) the failure to show that the relevant disorders colored "the whole psychic life" of Plaintiff due to her ability to live independently and raise her children, (2) the failure to satisfy the Listing 12.04(A) criteria given that Dr. Grelecki's opinion was not entitled to full weight, (3) the failure to prove the "medically

documented persistence" of the requisite symptoms due to the paucity of the treatment record, (4) the failure to prove at least two of the Listing 12.04(B) criteria, and (5) the failure to prove that Plaintiff suffered from any of the Listing 12.04(C) criteria for the requisite length of time. Because ALJ West had more than a "mere scintilla" of evidence in support of his determination, this Court must defer to the ALJ's factual findings and find in favor of the Commissioner. *Hartranft*, 181 F.3d at 360.

Although not directly addressed by Plaintiff in her Brief, the Court also holds that ALJ West's determinations regarding Plaintiff's physical disorders deserve deference. ALJ West provides extensive analysis about Plaintiff's physical ailments, which include "diabetes mellitus, lumbar radiculopathy, degenerative disc disease of the cervical spine, [and] carpal tunnel syndrome." (Tr. at 24). The ALJ's analysis properly addresses each physical disorder, what evidence he considered, and why he came to his conclusions for each. Of particular note is the ALJ's weighing of evidence. For each alleged disability, ALJ West looked at the claims, compared those claims to the evidence, and only after weighing the evidence, denied finding Guzman disabled under the statute. (*See id.* at 24-26). This Court's review of those determinations indicates the ALJ's conclusion as to each ailment is supported by substantial evidence, and the Court is therefore required to give the opinion deference. *Hartranft*, 181 F.3d at 360.

    2. <u>Combination Analysis</u>

Although the claimant bears the burden of proving that her impairments meet those listed in Appendix 1, if a claimant's impairment does not meet the requirements of any listing, the ALJ is required to determine whether the combination of impairments is medically equal to any listed impairment. *See Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000)); 20 C.F.R. § 404.1526(b).

11

Here, ALJ West states that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (Tr. at 24). However, this is the extent of ALJ West's combination analysis. Although ALJ West sufficiently explains why Plaintiff's impairments do not meet the Appendix 1 listings individually, the ALJ does not provide any analysis or explanation as to why Plaintiff's impairments, when considered in combination, fail to equal a listed impairment. As in *Torres*, the ALJ here failed at step three by not considering Plaintiff's impairments in combination and remand is therefore necessary on this issue.

Therefore, the Court affirms ALJ West's decision under step three insofar as it finds that Plaintiff did not have an individual impairment that meets or medically equals one of the listed impairments, but remands for a combination analysis.

### C.  *The RFC is Supported by Substantial Evidence*

Plaintiff argues that the ALJ erred in determining that Plaintiff had an RFC to perform a range of unskilled, sedentary/light work. (Pl. Mov. Br. at 13-17, 23-30). The Court disagrees.

In determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of her limitations. 20 C.F.R. § 416.945(a)(3). The medical opinion of a treating source is given "controlling weight" as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 416.927(c)(2).

> ALJ West reviewed the evidence and reasonably concluded that Plaintiff
> 
> can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk up to 2 hours in an 8-hour day; and sit for the remaining hours. [Plaintiff] cannot climb ladders, ropes, or scaffolds, and can perform all other postural functions occasionally. [Plaintiff] can perform frequent handling and fingering. She must avoid concentrated exposure to extreme heat, humidity, and dust, fumes, and similar occupational irritants. [Plaintiff] can understand,

>   remember, and carry out simple instructions and can have occasional interaction
>   with the general public.

(Tr. at 26).

ALJ West's RFC assessment is supported by substantial evidence. ALJ West methodically analyzed Plaintiff's impairments and explained how each affected Plaintiff's functioning. For example, ALJ West acknowledged that Plaintiff suffers from diabetes but noted that there was no evidence of organ damage. (Tr. at 27). For Plaintiff's carpel tunnel syndrome, ALJ West extensively cited the relevant evidence and concluded that "the record is inconsistent with substantial limitation on the ability to use her hands." (*Id.* (citing Exs. 7F, 11F, 16F, 17F, 22F)).

Likewise, for Plaintiff's degenerative disc disease of the cervical spine and lumbar radiculopathy, the ALJ thoroughly analyzed the objective evidence—including supporting treating notes from Dr. Potashnik and Dr. Sachs—and found only "mild" spinal stenosis/cord compression. (*Id.* at 27-28). For example, ALJ West noted that an April 3, 2010 MRI of the cervical spine revealed a C5-6 disc herniation with mild cord compression and C6-7 disc bulge with no cord compression, and that a December 20, 2010 MRI revealed "slight regression" of the C5-6 disc herniation and no changes at C6-7. (*Id.* at 28 (citing Exs. 16F at 21, 17F at 7)). Dr. Potashnik noted "tenderness of the lumbar spine, but straight leg raising was positive in the supine position only and the upper and lower extremities had normal motion, strength, sensation, and reflexes." (*Id.* (citing Ex. 7F)). An April 1, 2011 report from Premier Orthopedic indicated that "[s]traight leg raising was negative, DTR's were 2+, and [Plaintiff] had 5/5 motor strength and intact sensory functioning." (*Id.* (citing Ex. 21F)). With respect to neck and back pain, ALJ West noted that in April 2010, an "EMG study revealed evidence of left C8-T1 radiculopathy and a right ulnar nerve lesion at the elbow" but "Dr. Sachs noted that [Plaintiff] had full range of motion of the neck and shoulder and no symptoms of cord compression." (*Id.* (citing Ex. 17F)). Additional records from

13

Dr. Sachs showed that Plaintiff "reported feeling better after a lumbar epidural and left shoulder trigger point injection, with nearly full motion of the left shoulder and 5/5 strength throughout." (*Id.*).  ALJ West also noted that a March 16, 2011 ER report "notes that [Plaintiff's] neck was fully mobile in all planes without pain and that she had a normal gait and station." (*Id.* (citing Ex. 15F)). Additionally, ALJ West noted that Plaintiff's claims of total disability were inconsistent with her being cleared for gym three times per week.  (*Id.* (citing Ex. 19F)).

Furthermore, ALJ West properly afforded lesser weight to the opinions of Dr. Grelecki and Dr. Groves that were inconsistent with the evidence as a whole.  As noted above, ALJ West was justified in giving less weight to Dr. Grelecki's opinions.  (*See* Part IV.A, *supra*).  Additionally, Dr. Groves's opinion was the only opinion in the record which concluded that Plaintiff was disabled based on physical impairments, but Plaintiff had "only routine or conservative treatment" and the amount of medication she was prescribed for her physical ailments was "not as much as would reasonably be expected."  (Tr. at 28 (citing Ex. 13F)).

In sum, the Court finds that the ALJ's RFC determination is supported by substantial evidence, and the Court is therefore required to give the opinion deference.  *Hartranft*, 181 F.3d at 360.

## V. CONCLUSION

For the reasons stated above, the final decision entered by ALJ West is affirmed with respect to the level of deference given to the treating physician, the analysis of individual impairments under step three, and RFC determination under step four. However, the case will be remanded for a step three analysis that considers whether the combination of Plaintiff's impairments is medically equal to any listed impairment. An appropriate Order accompanies this Opinion.

s/ *Esther Salas*
**Esther Salas, U.S.D.J.**
